845 P.2d 833

**David F. CUNNINGHAM and Deborah A. Cunningham, Plaintiffs–Appellees,**

v.

**OTERO COUNTY ELECTRIC COOPERATIVE, INC., a New Mexico Corporation, Defendant–Appellant.**

**No. 12239.**

Court of Appeals of New Mexico.

Oct. 21, 1992.

David F. Cunningham, pro se.

S. Thomas Overstreet, Wendell B. Lane, S. Thomas Overstreet, P.C., Alamogordo, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant Otero County Electric Cooperative (OCEC) appeals from a judgment entered by the trial court after a bench trial on Plaintiffs' action in ejectment and OCEC's counterclaim asserting a right to a ten-foot easement. We affirm the trial court's denial of OCEC's right to a ten-foot easement. While we recognize that an action for ejectment lies for a utility line and the correlative right of a secondary easement for maintenance and safety, we nevertheless hold as a matter of law based upon the undisputed evidence and stipulations that OCEC established a prescriptive easement. Consequently, Plaintiffs are not entitled to eject OCEC from the space occupied by the line and a reasonable space necessary to maintain or repair such line and to prevent hazards to public safety. Therefore, we reverse the trial court's decision ordering that OCEC remove the existing line and, for the reasons stated below, remand for further proceedings to determine the scope and extent of OCEC's secondary easement for maintenance and safety.

## I.  BACKGROUND.

OCEC constructed a single-phase power line above ground and along the southern boundary of property belonging to Plaintiffs' predecessors in title in February 1974. The owner was not consulted, nor was his consent obtained. OCEC's representative testified at trial that the placement of the power line was based solely on the most effective route to supply the area. The trial court found that OCEC's engineer believed that there would be no problem if the power line followed the boundary line.

Plaintiffs purchased the property, a vacant lot, in September 1986 in order to build a home. They had received the necessary building permits when they were informed of a possible problem with construction due to the power line. After further investigation, Plaintiffs discovered that OCEC claimed a thirty-foot easement in connection with the power line, fifteen feet of which extended onto Plaintiffs'

southern boundary and effectively precluded the use of the lot as a building site.

Plaintiffs filed a complaint in ejectment in February 1987 and OCEC answered, raising the statute of limitations, waiver, laches, and estoppel as affirmative defenses. OCEC also counterclaimed, asking the trial court to determine that it had express, prescriptive, or implied easements in the Timberline Addition of Cloudcroft, which is the subdivision in which Plaintiffs' property lies.

The evidence established that the poles are not on Plaintiffs' property. The closest pole is thirty inches west of the lot's southwest corner, and the line itself runs along the property's southern boundary. There was no evidence that OCEC ever came onto Plaintiffs' property to service either the line or the poles.

The trial court found that OCEC claimed a thirty-foot easement because it anticipated an expansion of the existing line to a three-phase line which required cross-arms. The court also found that no express easement existed over Plaintiffs' land, nor did OCEC establish the existence of a prescriptive easement, because, the court concluded, "[t]here [was] no open or visible use over Plaintiffs' land," and because Plaintiffs could not have reasonably known the extent of the claimed easement. The trial court determined that the existing line required a three to three-and-a-half-foot easement on either side for safe operation. The court found that there had never been a maintenance road along the line, and that if OCEC had an easement for the existing line, it would substantially increase the burden on the servient estate. The trial court also determined that the existing use of the line was a trespass on Plaintiffs' property, that the trespass interfered with the proposed use of Plaintiff's property, and ordered OCEC to remove the power line. Finally, the court permanently enjoined OCEC from further trespass.

## II. DISCUSSION.

On appeal, OCEC contends that the trial court erred in failing to find that Plaintiffs' complaint was barred by the statute of limitations or by the doctrines of waiver, laches, or estoppel. We believe that OCEC's statute of limitations argument is subsumed in its prescriptive easement argument. "There is no specific statute in this state under which title to an easement * * * can be obtained by prescription * * * * *" *Hester v. Sawyers,* 41 N.M. 497, 501, 71 P.2d 646, 649 (1937). In other words, if OCEC prevails in its prescriptive easement argument, it will have established that Plaintiffs failed to take appropriate legal action in a timely fashion. We see no significant difference, for purposes of this appeal, between the argument based on the statute of limitations and the arguments based on waiver, laches, and estoppel. Thus, we need not address any of these issues separately. OCEC also contends that the trial court erred in ordering ejectment and in denying its counterclaim. We address the arguments raised by the complaint and counterclaim together.

In evaluating the trial court's judgment that the line must be removed, a preliminary question is whether an action of ejectment lies on these facts. *See Bustos v. Gilroy,* 106 N.M. 808, 811, 751 P.2d 188, 191 (Ct.App.1988) (citing *Worland v. Worland,* 89 N.M. 291, 551 P.2d 981 (1976)) (conclusion must be supported by adequate findings). One difficulty is that there is no finding by the court that the line actually extends over Plaintiffs' property. There is a finding that there was no open or visible use over Plaintiffs' land, and there is a finding that the line runs along the boundary. Another difficulty is that ejectment requires proof of an "ouster from possession." *See* Charles Donahue, Jr., et al., *Property* 293 (1974) [hereinafter Donahue]; *see also Pacheco v. Martinez,* 97 N.M. 37, 41, 636 P.2d 308, 312 (Ct.App.1981) ("In ejectment, the parties' rights to possession are primarily in issue."). Since it is undisputed that the poles are not on the property, we must decide whether the presence of the line along the southern boundary, if not legally justified, is a sufficient ouster to support an action of ejectment.

We resolve the absence of a finding that the line actually extends over Plaintiffs'

property as follows. This court scheduled oral argument by telephone in order to pose questions about the evidence offered at trial. The order scheduling oral argument listed some of the questions the court proposed to ask. One of the questions listed was "[w]hether the evidence showed that the power line occupies space over Plaintiffs' land, and, if so, does the evidence show what portion or portions of the land the line crosses." At oral argument the parties agreed that the evidence showed that if the line fell, it would lie in part on Plaintiffs' property. In view of this concession, we conclude Plaintiffs established that the line extends, at least in part, over their property.

We resolve the question of ouster on the basis that there is a "visible and tangible structure by which possession is withheld, to the extent of the space occupied [by the line]." *Butler v. Frontier Tel. Co.*, 186 N.Y. 486, 79 N.E. 716, 718 (1906) (quoted in Donahue, *supra* note 3, at 293). In addition, the trial court's order requiring OCEC to remove the line is apparently based at least in part on the finding that an easement of thirty-six to forty-two inches is required for safe operation of a single-phase line. Plaintiffs have not challenged that finding, and OCEC contends that a greater easement is required for safety reasons. We accept the finding establishing that some clearance of the line is required for safety. *See Latta v. Harvey*, 67 N.M. 72, 352 P.2d 649 (1960) (findings not challenged on appeal accepted as true). While the dispossession caused by the line itself is minimal, the trial court's finding that a three to three-and-a-half-foot easement is necessary for safe operation makes it clear that the effect of allowing the line to remain is not *de minimus.*

For these reasons, we hold that the action of ejectment was an appropriate remedy. We note that a statutory suit to quiet title would also have been appropriate. *See Pacheco*, 97 N.M. at 41, 636 P.2d at 312. "[Quiet title action] is used to determine any interest in land whether plaintiff is in or out of possession." *Id.* (emphasis omitted). We also conclude that there is sufficient evidence of an ouster to support

an action in ejectment unless OCEC has a legal right to possess some part of Plaintiffs' property. Thus, the right to ejectment applies only to the extent OCEC's use exceeds its prescriptive easement. We next address the issues raised by the counterclaim.

■ OCEC argues on appeal that it proved open and notorious use because Plaintiffs admitted that they saw the power line when they purchased the property, the testimony of OCEC's engineers established continuous and uninterrupted use for the prescriptive period, and thus OCEC is entitled to a presumption that the use was adverse and under a claim of right. *Sanchez v. Dale Bellamah Homes of N.M., Inc.*, 76 N.M. 526, 417 P.2d 25 (1966). The first question raised by their argument is whether OCEC had a prescriptive easement to run the line. An additional question exists as to the proper scope and nature of the easement. *See, e.g., Kuras v. Kope*, 205 Conn. 332, 533 A.2d 1202 (1987) (owners of property subject to easement brought action to enjoin easement owners from broadening scope of easement, and easement owners brought action to enjoin property owners from interfering with use of easement).

■ The first question must be answered in OCEC's favor. The party claiming the existence of a prescriptive easement must prove the elements of such an easement by clear and convincing evidence. *Garmond v. Kinney*, 91 N.M. 646, 579 P.2d 178 (1978). To establish a prescriptive easement, OCEC had to prove "open, uninterrupted, peaceable, notorious, adverse [use], under a claim of right" for the prescriptive period with the owner's constructive or actual knowledge. *Hester v. Sawyers*, 41 N.M. at 504, 71 P.2d at 651. On the basis of the stipulation the parties entered into at trial and the undisputed evidence of the length of time the line has been in its present location, we conclude that OCEC established a prescriptive right to run the line in its present location. *See Maloney v. Wreyford*, 111 N.M. 221, 804

P.2d 412 (Ct.App.1990). This conclusion precludes removal of the line.

■ The second question, the scope of the easement, is more complicated. The trial court's decision indicates that OCEC failed to prove two essential elements of a prescriptive easement claim to the fifteen feet it initially claimed and to the ten feet to which its proposed findings refer: open and notorious use. There was no evidence that, after the line was erected, OCEC had ever come onto its claimed easement to service the line or to remove vegetation. The court found that there had never been a maintenance road. Plaintiffs' stipulation that they saw the power line before they purchased the property was not enough to establish open and notorious use of Plaintiffs' property to the extent of either ten or fifteen feet. *See Brooks v. Tanner*, 101 N.M. 203, 680 P.2d 343 (1984) (proof of prescriptive easement requires a showing by clear and convincing evidence of each element necessary to establish such easement, including that use was open and notorious for ten years or more).

The trial court found that the prescriptive use claimed by OCEC was the fifteen feet required by a replacement line, while the use necessary to maintain the existing line was substantially less than that claimed by OCEC. If OCEC established a prescriptive easement regarding the line itself, it was privileged to maintain it. *See* V *Restatement of Property (Servitudes)* § 480 (1944). "Unless the burden upon the servient tenement is thereby unreasonably increased, one who has an easement created by prescription has the privilege to do such acts as are necessary to make effective the enjoyment thereof." *Id.* However, assuming OCEC established a right to cross Plaintiffs' land with its power line, in order to establish a right to the fifteen-foot easement it sought, OCEC should have shown that the right of use it sought either continued or repeated the use by which the easement was created. *See* V *Restatement of Property (Servitudes)* § 477. "The extent of an easement created by prescription is fixed by the use through which it was created." *Id.* OCEC failed to make such a showing. *See Kuras*, 533

A.2d at 1208–11 (prescriptive easement in road established; defendants could grade road and repair bridge, but could not install telephone and electric lines under the easement because such use was inconsistent with normal development of the roadway); *Benner v. Sherman*, 371 A.2d 420 (Me. 1977) (right to use road for recreational purposes restricted to those general recreational purposes for which road was used during prescriptive period).

The trial court's decision denying the prescriptive easement sought is clearly correct. There is no evidence of OCEC's open and notorious use of the specific easement claimed over Plaintiffs' land. *Cf. Walter v. Martinson*, 276 Or. 411, 555 P.2d 21 (1976) (evidence supported trial court's finding that easement was sixteen feet wide, rather than the twenty-four feet defendants claimed). There is insufficient evidence to support a finding that the specific easement claimed continued or repeated a right acquired by prescription.

Alternatively, OCEC might have shown that the right it sought was "incident" to the prescriptive easement it had acquired in the line itself. *See Dyer v. Compere*, 41 N.M. 716, 73 P.2d 1356 (1937) (recognizing the right of an easement owner to remove obstructions on the servient easement which interfere with the owner's ability to maintain the easement). The right to enter the servient property to maintain and repair facilities located within an easement is sometimes called a " 'secondary easement.' " 25 Am.Jur.2d *Easements and Licenses* § 86 (1966). Courts have long recognized the right of power companies to prevent the erection of structures and other obstructions beneath transmission lines incident to rights acquired under a power line easement. *See generally* C.S. Patrinelis, Annotation, *Correlative Rights of Dominant and Servient Owners in Right of Way for Electric Line*, 6 A.L.R.2d 205 (1949); *see also Farmer v. Kentucky Utils. Co.*, 642 S.W.2d 579, 580–81 (Ky.1982) (owner of prescriptive easement for electric wires may enter upon premises over which the wires are constructed for purposes of maintenance).

Because OCEC is entitled to an easement in the power line, it was entitled to such

use of Plaintiffs' land as is necessary to enjoy that easement. *See Glenn v. Poole,* 12 Mass.App. 292, 423 N.E.2d 1030 (1981). For example, the holder of an appurtenant easement by prescription may make repairs and improvements, so long as such improvements do not unreasonably burden the servient tenant. *See id.* In *Garver v. Public Service Co.,* 77 N.M. 262, 271, 421 P.2d 788, 794 (1966), where the Supreme Court held that a defendant had the right to enter the premises and to construct and maintain its power lines, the court said that such a taking is "inconsistent with trespass." We think that the findings OCEC requested are sufficient to preserve a greater claim than three to three-and-a-half feet. The next question is whether the evidence offered at trial supports the greater claim. If the trial court determines that the prescriptive easement is not as extensive as claimed, it may determine the extent of the use that has been established. *See Walter,* 555 P.2d at 23. The question is not the desired scope, but the actual use or necessary clearance the evidence supports. *Id.*

During oral argument, OCEC took the position that clearance of eight feet on each side of the existing line is required for safety reasons by applicable federal and state regulations. Subsequent to oral argument, OCEC supplied this court with citations to the regulations on which it bases its position. Plaintiffs contend that these regulations were not part of the exhibits introduced and relied upon at trial, and therefore that this court should not consider them. We agree with Plaintiffs that exhibits not offered at trial may not be relied upon to support appellate arguments. *See id.; State v. Lucero,* 90 N.M. 342, 563 P.2d 605 (Ct.App.1977). Nevertheless, more detailed information on the requirements imposed by federal and state regulations was offered as part of an exhibit at trial and appears to be the source of the trial court's finding that a three to three-and-a-half-foot easement is necessary for safe operation of the existing line. The information OCEC has provided on appeal provides additional legal authority concerning the relevance of these regulations.

That is permissible under the rules. *See* SCRA 1986, 12–213(D) (Repl.1992).

We cannot determine from the exhibit offered at trial on what basis the trial court concluded that only three or three-and-a-half feet were required for safety. The same exhibit suggests that, depending on the type of structure Plaintiffs intend to build, a minimum of eight feet might be required. In fact, one of the witnesses for OCEC, Mr. Mershon, testified that he informed the Plaintiffs "that the National Electric Safety Code does require us to come no closer, [at] a minimum to 8 feet from a structure."

We conclude that the proper resolution of the complaint in ejectment turned upon whether OCEC established a prescriptive easement in the power line itself. OCEC established a prescriptive right to run the line, and therefore the necessary clearance for safety is not a trespass. OCEC did not establish a secondary easement of the scope it sought. It did establish a right to a secondary easement, and we remand to permit the trial court to make findings regarding the scope of that right, the width of the secondary easement necessary to maintain or repair such line and to prevent hazards to public safety.

### III. CONCLUSION.

The trial court's order granting Plaintiffs' action in ejectment, directing OCEC to remove its existing line along the boundary of Plaintiffs' property and enjoining it from trespass upon Plaintiffs' property, is reversed. The cause is remanded to the trial court to adopt additional findings of fact and conclusions of law detailing the scope of the secondary easement on each side of the existing line necessary for safety, repair, and maintenance purposes, and for entry of an amended judgment consistent with this opinion. No costs are awarded on appeal.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.