# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>October 7, 2014</u>

**NO. 32,656**

**LISA A. BURCIAGA SEGURA,**

      Plaintiff-Appellee,

v.

**TERRY A. VAN DIEN and**
**NINA A. LAUERMAN,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Matthew J. Sandoval, District Judge**

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

for Appellee

Nancy Ann Richards
Las Vegas, NM

for Appellants

**OPINION**

**ZAMORA, Judge.**

{1}     Terry Van Dien and Nina Lauerman (Defendants) appeal a judgment granting Lisa Burciaga Segura (Plaintiff) an easement to use a common driveway over their property. In this appeal, we must determine whether an unrecorded oral permissive easement gives rise to an easement by prescription after the prescriptive period. Following the Restatement (Third) of Property, we hold that prescriptive use may be either adverse use or use pursuant to the terms of an intended but imperfectly created easement, or the enjoyment of the benefit of an intended but imperfectly created easement. Restatement (Third) of Prop.: Servitudes § 2.16 (2000). Applying this holding to the facts of this case, we affirm.

**BACKGROUND**

{2}     In 1996, Plaintiff and her then husband (collectively the Seguras) purchased an undeveloped tract of land (Tract B-1) on which they planned to build a house. Shortly after the Seguras purchased Tract B-1, Richard and Janine Duncan (the Duncans) purchased an adjacent tract (Tract B-2) for the same purpose. At that time, neither tract had a house nor a driveway on it. Both tracts were set back from State Road 94 and had limited access to the road. The Seguras and the Duncans agreed to build a single common driveway to serve both tracts. They did so, agreeing on the location

of the driveway and sharing the costs of building it. The driveway provided access to both the Seguras' and the Duncans' residences and it was used for that purpose continuously until 1999. Then the couples agreed to realign the driveway, again splitting the expense. The realigned driveway was used by the Seguras and the Duncans to access their respective properties until 2006. Though the couples intended to reduce their agreement to writing, they never did, nor did they record Plaintiff's easement over the property.

{3}     In 2006, the Duncans sold Tract B-2 to Defendants. The deed did not mention the easement, however, the realigned driveway giving access to Tracts B-1 and B-2 remained in continuous use by Plaintiff and Defendants. The relationship between Plaintiff and Defendants deteriorated. In 2010, Mr. Van Dien wrote Plaintiff a letter announcing that he would be closing the common driveway. Defendants attempted to exclude Plaintiff from the use of the driveway and, according to Plaintiff, Mr. Van Dien also threatened and harassed Plaintiff and her children. Plaintiff sued and was granted a preliminary injunction, enjoining Defendants from interfering with her use of the driveway and from threatening or harassing Plaintiff and her children. Both parties moved for summary judgment. The motions were denied and after a non-jury trial, the district court entered a judgment in favor of Plaintiff, granting her a prescriptive easement over the driveway. This appeal followed.

**DISCUSSION**

2

{4} On appeal, Defendants argue that the district court erred in denying their motion for summary judgment and in granting Plaintiff a prescriptive easement where Plaintiff failed to show adverse use of the driveway. Plaintiff contends that her agreement with the Duncans to build and share the driveway in 1996 created an unrecorded easement that ripened into a prescriptive easement over what is now Defendants' property. This case was submitted to the district court based on stipulated facts. Thus, resolution of the parties' dispute over Plaintiff's right to use the driveway depends on whether the intended but imperfect easement created by her agreement with the Duncans gives rise to a prescriptive easement. This is a legal issue that we review de novo. *Amethyst Land Co. v. Terhune*, 2014-NMSC-015, ¶ 9, 326 P.3d 12.

{5} We have not found any New Mexico case to have addressed this precise issue. For authoritative guidance on the law pertaining to easements, we look to the Restatement (Third) of Property: Servitudes. *E.g.*, *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 33, 150 N.M. 428, 260 P.3d 414; *Algermissen v. Sutin*, 2003-NMSC-001, ¶¶ 10-11, 133 N.M. 50, 61 P.3d 176; *Cox v. Hanlen*, 1998-NMCA-015, ¶ 15, 124 N.M. 529, 953 P.2d 294; *Cunningham v. Otero Cnty. Elec. Coop., Inc.*, 1992-NMCA-116, ¶ 15, 114 N.M. 739, 845 P.2d 833.

{6} According to the Restatement, a servitude is created by a prescriptive use of land where the prescriptive use is open or notorious and continued without effective

3

interruption for the prescriptive period. Restatement (Third) of Prop.: Servitudes § 2.17 (2000). A prescriptive use of land is defined as either:

> (1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed, or

> (2) a use that is made pursuant to the terms of an intended but imperfectly created servitude, or the enjoyment of the benefit of an intended but imperfectly created servitude.

Restatement (Third) of Prop.: Servitudes § 2.16, at 221-2.

{7} Our Supreme Court adopted the Restatement's first definition of prescriptive use in *Algermissen*: "[W]e follow the example of the recently published Restatement (Third) of Property: Servitudes . . . . According to this model, an easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Algermissen*, 2003-NMSC-001, ¶ 10. Here, Plaintiff urges us to adopt the Restatement's second definition of prescriptive use, which arises from an intended but imperfectly created easement or servitude.

{8} This approach uses prescription to perform a title-curing function where "people try to create a servitude but fail, initially because they do not fully articulate their intent or reduce their agreement to writing, or because they fail to comply with some other formal requirement imposed in the jurisdiction." Restatement (Third) of Prop.: Servitudes § 2.16 cmt. a, at 222. In these situations, if the parties "act as though

4

they have been successful in creating the servitude, and continue to do so for the prescriptive period," a servitude may be created by prescription if the other requirements (open and continuous use) are met. Restatement (Third) of Prop.: Servitudes § 2.16 cmt. a, at 222. By observing the terms of the intended servitude for the prescriptive period, the parties demonstrate the "existence and terms of the servitude and resolve[ ] any doubts as to [their] intent that may have been created by their failure to comply with the formality." Restatement (Third) of Prop.: Servitudes § 2.16 cmt. a, at 222.

{9} Although an easement by prescription without adversity was not included in the Restatement until 2000, it "has always been present in American servitudes law[.]" Restatement (Third) of Prop.: Servitudes § 2.16 cmt. a, at 222. Some jurisdictions have expressly recognized an exception to the adversity rule. *See, e.g., Clinger v. Hartshorn*, 89 P.3d 462, 466 (Colo. App. 2003) ("An easement by prescription is acquired when the use is open or notorious, continuous without effective interruption for an eighteen-year period, and either adverse or pursuant to an attempted but ineffective grant."); *Walker v. Hollinger*, 968 P.2d 661, 665 (Idaho 1998) (stating that prescriptive use can be established where the use is adverse or by a claim of right); *Nat'l Props. Corp. v. Polk Cnty.*, 386 N.W.2d 98, 105 (Iowa 1986) ("[W]e have modified the [adversity] requirements to establish an easement by prescription in those instances in which the original entry upon the lands of another is under an oral

agreement or express consent of the servient owner and the party claiming the easement expends substantial money or labor to promote the claimed use in reliance upon the consent or as consideration for the agreement." (internal quotation marks and citation omitted)).

{10}   Other jurisdictions, as well as some commentators, focus on statute-of-limitations theory and categorize uses made pursuant to oral grants and other intended but imperfectly created servitudes as hostile or adverse. Restatement (Third) of Prop.: Servitudes § 2.16 cmt. a, at 222; *see also Kirby v. Hook*, 701 A.2d 397, 404 (Md. 1997) (holding that use based on an ineffective oral grant of easement was adverse, not permissive); James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements & Licenses in Land*, *available at* Westlaw LELL § 5:10 ("[U]se of land under an invalid grant of an express easement does not negate its adverse character because such usage does not depend on the landowner's sufferance.").

{11}   The rationale behind this approach is that "the use derogates from the owner's title, or that the use is adverse because it can be made wrongful by revocation of the license created by the imperfect servitude." Restatement (Third) of Prop.: Servitudes § 2.16 cmt. a, at 222. "To avoid these convoluted explanations and the errors that follow literal applications of the terms 'adverse' and 'hostile,' [the Restatement] adopts a definition of prescriptive uses that straightforwardly recognizes the two types of uses that can lead to prescriptive rights"[:] adversity and an attempted but

6

ineffective grant. Restatement (Third) of Prop.: Servitudes § 2.16 cmt. a, at 223. We agree with the Restatement's rationale and we follow it here.

{12} It is undisputed that the Seguras and the Duncans, together, built a common driveway for the benefit of both Tract B-1 and B-2; they agreed on the location of the driveway and shared the expense of its construction. It is also undisputed that the Duncans intended to grant Plaintiff an easement over the common driveway, but that they ultimately failed to reduce their agreement to writing. Applying the Restatement's principles to this situation we conclude that Plaintiff's use of the common driveway was pursuant to an intended but imperfectly created easement and thus, constitutes prescriptive use.

{13} To the extent that Defendants argue that the district court's findings of fact are insufficient to support its conclusions because the findings do not include a start date for the prescriptive period, we disagree. It is uncontroverted that Plaintiff openly used the common driveway from its inception in 1996 until the ten year period ran. This establishes that Plaintiff's prescriptive use of the driveway was open, notorious, and continuous for the ten-year prescriptive period. As a result, we conclude that the district court did not err in granting Plaintiff an easement by prescription over the common driveway.

**CONCLUSION**

{14} For the foregoing reasons we affirm.

{15}   **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**TIMOTHY L. GARCIA, Judge**